# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Scott H. West, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 07 C 2994 |
| | ) |
| Illinois State Board of Education, | ) |
| Donald W. Evans, | ) |
| Christopher A. Koch, and Robert L. Wolfe, | ) |
| | ) |
| Defendants, | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Court Judge:

Defendants Illinois State Board of Education ("ISBE"); Christopher A. Koch, in his official capacity as State Superintendent of the ISBE; Robert L. Wolfe in his official capacity as External Assurance; Donald W. Evans, in his official capacity as Director of Human Resources, Professional Development and Conference Planning for the ISBE[1] move to dismiss in its entirety Scott West's ("Plaintiff") Complaint alleging a violation of the Americans with Disabilities Act of 1990 ("ADA"). For the reasons stated below, we deny Defendants' motion.

---

[1] Randy J. Dunn, former State Superintendent of the ISBE, is no longer employed by the ISBE. Plaintiff concedes that it is not necessary to name Dunn as a defendant, as any prospective, injunctive relief would not apply to him.

## BACKGROUND

Plaintiff, a retired employee of the ISBE, allegedly has severe learning disabilities. (Compl. ¶¶ 5, 11-14). Plaintiff contends that he is aggrieved by Defendant's conduct, actions and inactions in violation of the ADA. Plaintiff alleges that because of his disabilities he received an unsatisfactory performance evaluation ("PE") on March 18, 2005 from his immediate supervisor, Robert Wolfe. (*Id.* ¶ 6). Plaintiff's treating psychiatrist, Susan Ahmari, M.D., sent a letter to Defendants Wolfe and Evans on May 24, 2005, stating that Plaintiff suffered from Attention Deficit Disorder and non-verbal learning disabilities that required an accommodation in his work environment. (*Id.* ¶ 8). On August 4, 2005, Plaintiff's psychologist, Dr. M. Patricia Bernbom, sent an opinion to Defendant Evans stating that Plaintiff suffered from ADHD, a non-verbal learning disability, a processing speed deficit and a short-term auditory sequential memory deficit, and requested specific accommodations. (*Id.* ¶ 9). Despite these requests, Plaintiff did not receive any accommodations from his employer. (*Id.* ¶ 10). Instead, Plaintiff received another unsatisfactory PE in March 2006. (*Id.* Ex. A. ¶ 3(C)). Plaintiff claims that Defendants' actions were to force Plaintiff to resign. (Compl. ¶ 10).

In response to Defendants' allegedly discriminatory actions, Plaintiff filed a grievance with his union, IFSOE Local 3236. (Compl. Ex. A ¶ 7; Mot. at 1-2). To resolve the grievance, the parties entered a Settlement Agreement on April 3, 2006. (Mot. at 2). Plaintiff signed the Settlement Agreement and a Letter Offering to Retire, indicating his intent to retire effective June 30, 2006. (Compl. ¶ 14; Ex. A, B). Plaintiff's research on the Illinois State Attendance-On-Line website led him to think that he would attain twenty years of service with the ISBE in May of 2006. (Compl. ¶ 11). Plaintiff alleges that he believed he would be eligible to receive his full pension and medical

benefits upon the June 30, 2006 retirement date in the Settlement Agreement, as he turned fifty-five years old on June 6, 2006, and had already accumulated the necessary twenty years of service as of May of 2006. (*Id.* ¶¶ 12, 15). Plaintiff's union representative participated in the resolution and signed the Settlement Agreement also. (*Id.* Ex. A ¶ 7). The Settlement Agreement provided Plaintiff an accommodation to work on a special project in the ISBE Chicago office as soon as he could be trained but, no later than April 10, 2006. (*Id.* Ex. A ¶ 1). He would continue with the project until his retirement. (*Id.*).

However, on April 7, 2006, His Teacher Retirement System ("TRS") representative, advised him that the information from the Attendance-On-Line website was incorrect. (Compl. ¶ 16). The Settlement Agreement left him seventy-two days short of the twenty years of service necessary to collect his pension. (*Id.*). Even if his accumulated sick, personal and vacation days were factored into the calculation, Plaintiff remained approximately thirty-three days short, rendering him ineligible to receive his pension or medical benefits until he reached the age of sixty. (*Id.*). On April 19, 2006, in response to the information from his TRS representative, Plaintiff sent a letter to the ISBE Human Resources Department attempting to rescind his Letter Offering to Retire and withdrawing his signature from the Settlement Agreement. (*Id.* ¶ 17; Ex. C). Defendants refused to accept his rescission. (Compl. ¶ 18).

Plaintiff filed a state court complaint against Defendants, on or about, June 29, 2006. (Mot. at 2, Ex. C). That complaint was dismissed on January 18, 2007, based on lack of subject matter jurisdiction and ripeness. (*Id.*). Plaintiff then pursued the matter at the federal level, filing his EEOC charge on January 12, 2007. (Mot. Ex. G). On or about February 28, 2007, Plaintiff received a Right to Sue Letter from the U.S. Department of Justice stating that he had ninety days from

receipt of that letter in which to commence a civil action. (Compl. Ex. D). Plaintiff filed the present Complaint against ISBE alleging discrimination in violation of the ADA on May 29, 2007. (Compl. ¶ 48). Plaintiff asks that the Defendants be found in violation of the ADA, be enjoined from terminating Plaintiff's employment, and that they be required to provide him with reasonable accommodations. (*Id.* ¶ 6).

Defendants now move to dismiss the Complaint on the following three grounds: 1) the individual Defendants should be dismissed as they do not fit within the definition of "employer" under the ADA and therefore they cannot be held liable; 2) Plaintiff's ADA claims are barred by the applicable statutory limitations period as he failed to file his EEOC charge within 300 days of the alleged discriminatory acts; and 3) Plaintiff's ADA claims are barred by the Settlement Agreement that Plaintiff knowingly and voluntarily executed on April 3, 2006.

## STANDARD OF REVIEW

A court may grant a motion to dismiss under Federal Rule of Procedure 12(b)(6) when "it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957). The purpose of a motion to dismiss under 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). A sufficient complaint need not give "detailed factual allegations," but it must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007).

## ANALYSIS

1.  **Individual Liability Under the ADA**

Defendants Evans, Koch and Wolfe contend that individuals who do not fit the statutory definition of employer cannot be held liable under the ADA. *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1282 (7th Cir. 1992). Under the ADA, an employer is "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such person." 42 U.S.C. § 12111(5)(A) (2007). Defendants argue, citing Seventh Circuit authority, that individual liability for supervisors was not intended under the ADA. *Silk v. City of Chicago*, 194 F.3d 788, 797 n.5 (7th Cir. 1999). Plaintiff responds that an exception to this rule, recognized by the Supreme Court and adopted by the Seventh Circuit, exists where state officials in their official capacities are sued for prospective injunctive relief. *Bd. of Trustees v. Garrett*, 531 U.S. 356, 374, 121 S. Ct. 955, 968 n.9 (2001); *Bruggeman v. Blagojevich*, 324 F.3d 906, 912-13 (7th Cir. 2003).

Defendants Evans, Koch and Wolfe respond that any injunctive relief to which Plaintiff may be entitled could be attained against Defendant ISBE and that naming the individual Defendants is redundant. *Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir. 1987). The *Jungels* court found that adding the mayor as an individual defendant in his official capacity to the plaintiff's §1983 suit against the city made no practical difference as the city is liable for the official actions of its official. *Id.* However, Plaintiff here asks for more than liability. Plaintiff requests that we enjoin the individual Defendants, Evans, Koch and Wolfe, from terminating Plaintiff's employment, and require them to provide Plaintiff reasonable accommodations. Because the relief requested is injunctive and prospective in nature and the individual Defendants are directly responsible for providing the accommodations, the individual Defendants may be held liable under the ADA.

**2.     300 Day Applicable Limitations Period Under the ADA**

Defendants argue that Plaintiff's ADA claim is barred because he failed to file his charge within 300 days of the alleged discriminatory acts. In order for an EEOC charge to be timely, it must be filed within 300 days of the discriminatory act. *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004); *Koelsch v. Beltone Elecs. Corp.*, 46 F.3d 705, 707 (7th Cir. 1995); see 42 U.S.C. § 2000e-5(e)(1) (2007). As Plaintiff filed his EEOC charge on January 12, 2007, only acts occurring on or after March 19, 2006 fall within the applicable limitations period and are covered by the charge.

Plaintiff argues that he is within the 300 days preceding the date of filing with the EEOC because he is alleging 1) specific acts by ISBE's agents within the 300 day period, including refusal to provide Plaintiff with reasonable accommodations and failure to acknowledge or accept his rescission of resignation on or about April 19, 2006; and 2) continuing discrimination as harassment that began prior to the 300 day period and continued into the 300 day period forced Plaintiff to resign.

**A.     Specific Acts of Discrimination**

*I.     Failure to accommodate disability*

Plaintiff argues that Defendants failed to provide him with reasonable accommodations within the 300 day window. "A failure to accommodate has been considered a discrete act of discrimination." *Kaplan v. City of Chicago*, No. 99 C1758, 2005 WL 1026574, at *3 (N.D. Ill. Apr. 22, 2005); *see also Horton v. Potter*, 369 F.3d 906, 910 (6th Cir. 2004). Defendants claim that the only requests to accommodate occurred on May 24, 2005 and August 4, 2005, when Plaintiff

forwarded his doctors' letters to Defendants. Both of these dates are outside the applicable limitations period, and are thus insufficient to sustain Plaintiff's ADA claim.

> ii. *Failure to acknowledge or accept rescission of resignation*

Plaintiff argues that Defendants discriminated against him on or about April 19, 2006 when they refused to acknowledge or accept his rescission of his resignation. However, Plaintiff also claims that the ISBE harassed him to resign so that it would not have to provide his accommodations. Plaintiff cannot claim both his forced resignation and the ISBE's refusal to acknowledge or accept his rescission of his resignation as separate acts of discrimination because "[a]n employer's refusal to undo a discriminatory decision is not a fresh act of discrimination." *Lever v. Northwestern Univ.*, 979 F.2d 552, 556 (7th Cir. 1992). "When a single discriminatory decision is taken, communicated and later enforced despite pleas to relent - the time starts with the initial decision." *Id.* Therefore, Plaintiff cannot use the refusals to acknowledge or accept his resignation as acts of discrimination to meet the applicable limitations period.

**B.     Continuing Discrimination**

Plaintiff argues that the ISBE's discrimination was continuous and ongoing and that the earlier conduct starting with the failures to accommodate through the harassment to procure his resignation should be viewed as one violation. In order to prove an ongoing violation, Plaintiff must show that acts outside the limitations period are "related closely enough to constitute a continuing violation." *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 446 (7th Cir. 1994); *see also Koelsch*, 46 F.3d at 707. Plaintiff's attempt to bring in earlier conduct under this doctrine fails for the reasons below. In short, Plaintiff is only able to allege that continuing discrimination occurred around the period of the Settlement Agreement itself.

### I. *Requested accommodations on August 4 and May 24, 2005*

Defendants argue Plaintiff was aware that he had a disability, was aware that he had requested accommodations on August 4 and May 24, 2005, and was aware that his requests were denied, all before March 19, 2006. One of the purposes of a "continuing violation theory is to permit the inclusion of acts whose character as discriminatory acts [were] not apparent at the time they occurred." *R.R. Donnelley,* 42 F.3d at 446; *see also Threatt v. Jackson*, No. 06-CV-3944, 2007 WL 723584, at *2 (N.D. Ill. Mar. 7, 2007) (holding that plaintiff could not toll the filing deadline under the continuing violation doctrine when plaintiff knew of violations before the applicable time limitation had run). As Plaintiff knew of the refusals to accommodate well before the applicable time limitations expired, he is barred from using the continuing violation doctrine to incorporate them now.

### ii. *March 2006 unsatisfactory PE*

Plaintiff contends he received an unsatisfactory PE in March of 2006 as part of an ongoing campaign of harassment to force his resignation. In order to use conduct before the 300 day applicable limitations period as part of the cause of action, "there must be a violation within the limitations period to serve as an anchor." *R.R. Donnelley*, 42 F.3d at 446. Plaintiff, however, does not allege that his PE occurred on, or after March 19, 2005, and we will not speculate that it does. *Twombly*, 127 S. Ct. at 1965 (stating that "factual allegations must be enough to raise a right to relief above the speculative level").

Plaintiff's allegation that he was forced to resign, however, leads us to infer that the Settlement Agreement itself was an act of discrimination, which does fall within the statutory limitations period. Employment termination can be an act of discrimination. *Lucas v. Chi. Transit*

*Auth.*, 367 F.3d 714, 724 (7th Cir. 2004). In addition, each discrete discriminatory act starts a new clock for filing charges. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S.Ct. 2061, 2073 (2002). The April 3, 2006 Settlement Agreement places Plaintiff's Complaint within the applicable limitations period. Moreover, it creates the necessary anchor for including the 2006 PE under the continuing violation doctrine as there could be no more than a five-week period between the two incidents. Accordingly, they are "related closely enough" to the Settlement Agreement to be incorporated under the continuing discrimination doctrine. *R.R. Donnelley,* 42 F.3d at 446; *see also Koelsch,* 46 F.3d at 707.

**3.     Effect of Plaintiff's Settlement Agreement**

Defendants allege that because Plaintiff knowingly and voluntarily entered into a valid Settlement Agreement releasing the present claim, this action must be dismissed. Plaintiff asserts the ISBE forced him to sign the Settlement Agreement so they would not have to provide him with accommodations. An employee's settlement of a potential employment discrimination claim based on federal law must be "knowing and voluntary." *Baptist v. City of Kankakee*, 481 F.3d 485, 490 (7th Cir. 2007). To determine whether the execution of a settlement is knowing and voluntary, a court must examine the "totality of the circumstances"

> including, but not limited to: 1) the employee's education and business experience; 2) the employee's input in negotiating the terms of the settlement;
> 3) the clarity of the agreement; 4) the amount of time the employee had for deliberation before signing the release; 5) whether the employee actually read the release and considered its terms before signing it; 6) whether the employee was represented by counsel or consulted an attorney; 7) whether the consideration given in exchange for the waiver exceeded the benefits to which the employee was already entitled by contract or law; and 8) whether the employee's release was induced by improper conduct on the defendant's part.

*Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 F.3d 562, 571 (7th Cir. 1995) (*Pierce I*). None of the factors alone are dispositive. *Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*, 110 F.3d 431, 441 (7th Cir. 1997) (*Pierce II*).

Defendants argue that Plaintiff knowingly and voluntarily entered into the Settlement Agreement pointing to factor six, as he had a union representative present who reviewed and signed the Settlement Agreement along with him. Plaintiff argues that the Settlement Agreement was not knowingly and voluntarily entered pursuant to factors seven and three, as he received no consideration and the agreement was not clear as to material terms.[2]

### i. Agreement was signed by both Plaintiff and union representative

Defendant asserts that because Plaintiff had his union representative review and sign the Settlement Agreement, it is presumed to be knowingly and voluntarily executed. When a plaintiff is represented by counsel through negotiations and settlement, the agreement is "presumptively informed and willing, absent circumstances of fraud or duress." *Pierce I*, 65 F.3d at 571 n.1. Further, an agreement can be considered knowing and voluntary if signed by both a plaintiff and a union representative. *Lockhart v. United States*, 961 F. Supp. 1260, 1267 (N.D. Ind. 1997). Because his union representative reviewed and signed the Settlement Agreement, this factor weighs against Plaintiff.

### ii. Consideration received by Plaintiff

Plaintiff argues that his release was not knowing and voluntary, despite having a union representative with him, as he received no consideration. Congress has recognized the importance

---

[2] The parties have not addressed the remaining factors considered when evaluating the totality of the circumstances, including, for example, whether Plaintiff negotiated the terms of the Settlement Agreement.

of consideration and modified statutory language to emphasize it. The Age Discrimination in Employment Act ("ADEA"), for example, now provides that "a waiver may not be considered knowing and voluntary unless at a minimum" certain conditions are met, one of which is that "the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled." 29 U.S.C. § 626(f)(1)(D) (2007). As the courts interpret the ADA and the ADEA similarly, consideration is also a prime factor in an ADA release. *AIC Sec. Investigations*, 55 F.3d at 1279-80 (stating "courts routinely apply arguments regarding liability" under the ADA, Title VII and the ADEA interchangeably). The Seventh Circuit agrees that "consideration in exchange for a waiver of federal rights should exceed the benefits to which the employee was already entitled by contract or law." *Pierce I*, 65 F.3d at 571 (stating that the existence of a future obligation that was extinguished in exchange for the extension of a standard severance package stands as merely one piece of objective evidence tending to support plaintiff's claim that he was subjectively unaware that he was waiving important statutory rights). Plaintiff claims the only benefit he gained by signing the Settlement Agreement was a three-month accommodation from ISBE allowing him to work out of the Chicago office.³ Because he was already entitled to this "benefit" by law, *see* 42 U.S.C. §§ 12112(a), (b)(5)(a) (2007), this factor weighs in favor of Plaintiff.

      iii.     *Clarity of the Agreement*

Plaintiff claims his ability to retire, and collect pension benefits, was a material term of the Settlement Agreement and was an express term of his Letter Offering to Retire. Defendants argue

---

³ Defendants also agreed to remove unsatisfactory performance evaluations from Plaintiff's file from March 18, 2005 and March 2006.

that the Settlement Agreement was not misleading or ambiguous, as there is no mention of pension benefits in either the Settlement Agreement or Plaintiff's Letter Offering to Retire. Defendants note that "[a] contract is sufficiently definite and certain to be enforceable if the court is enabled from the terms and provisions thereof . . . to ascertain what the parties have agreed to do." *Pritchett v. Asbestos Claims Mgmt. Corp.*, 332 Ill. App. 3d 890, 896, 773 N.E.2d 1277, 1282 (5th Dist. 2002).[4]

Plaintiff argues that the term "retirement" implies pension benefits and is used throughout the Settlement Agreement and in his Letter Offering to Retire. The TRS defines "retirement" as "[e]ntry upon a retirement annuity or receipt of a single-sum retirement benefit granted under this Article after termination of active service as a teacher." 40 ILCS 5/16-118 (2007). Defendants contend that this definition is for purposes of the TRS Article only. See 40 ILCS 5/16 - 103 (2007). Defendants assert instead that the ordinary definition of "retirement" in Black's Law Dictionary as "voluntary termination of one's own employment or career, esp. upon reaching a certain age" is controlling. BLACK'S LAW DICTIONARY 712 (7th ed. 2000). Plaintiff responds that his retirement and pension are bound by the rules and regulations of the TRS. We agree that the language and definitions of the TRS are pertinent to the facts at hand.

In addition, the above analysis, while relevant, does not give enough weight to federal statutory goals. *Pierce II*, 110 F.3d at 437; *see also Finz v. Schlesinger*, 957 F.2d 78, 81 (2d Cir. 1992) (stating that "[t]he validity of an individual's waiver of pension benefits is subject to closer scrutiny than his or her waiver of general contract claims"). Courts need to ensure that federally protected rights are not "undermined by private agreements born of circumstances in which

---

[4] When considering whether a settlement agreement involving federal employment discrimination claims is enforceable, state law governs. *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 507 (7th Cir. 2007).

employees confront extreme economic pressures or lack information regarding their legal alternatives." *Pierce II*, 110 F.3d at 437. The evaluation of such a waiver focuses on "whether a reasonable person would have understood that she was waiving her interest in the proceeds or benefits in question [rather] than [on] any magic language contained in the waiver itself." *Melton v. Melton*, 324 F.3d 941, 945-46 (7th Cir. 2003) (holding wife is proper beneficiary under husband's employee group life insurance policy as divorce decree did not specifically waive her interest in the proceeds of this policy); *see also Frommert v. Conkright*, 472 F. Supp. 2d 452, 463 (W.D.N.Y. 2007) (ruling in an ERISA case that even though plaintiffs' own counsel was present when the releases were signed, the resulting loss of pension benefits adds to the ambiguity of the scope of the release, which should not be resolved against plaintiffs). Given the important statutory goals at issue, and considering the totality of the circumstances, we cannot conclude at this juncture that Plaintiff's waiver of the ADA claim was knowing and voluntary.

## **CONCLUSION**

We find that Plaintiff has alleged facts raising a right to relief above the speculative level and provided legitimate questions as to the voluntariness and the validity of the Settlement Agreement. The question is whether Plaintiff knowingly and voluntarily released his discrimination claim and agreed to forego his pension. Of the eight factors used by the Seventh Circuit to evaluate whether a settlement is voluntarily and knowingly executed, three are in question in this case. One factor (representation of counsel) favors the Defendants and two factors (lack of consideration and clarity of the agreement) favor Plaintiff. The parties agree and acknowledge that the release was made under a misunderstanding as to Plaintiff's pension entitlement. In the final analysis, Congressional policy seeking to protect employee pension benefits instructs us to weigh the factors in favor of

Plaintiff.

We find Plaintiff's Complaint sufficient to allege that the Settlement Agreement was a forced resignation and an act of discrimination. We therefore deny Defendants' motion to dismiss. It is so ordered.

                                                                    Honorable Marvin E. Aspen
                                                                    U.S. District Court Judge

Dated: November 20, 2007